NOTICE
Decision filed 08/02/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240415-U

NO. 5-24-0415

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* NAOMI C., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Jackson County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 24-JA-1 |
| | ) | |
| David C., | ) | Honorable |
| | ) | Ella L. Travelstead, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:   In this appeal from the circuit court's orders finding the respondent an unfit parent and terminating his parental rights, the record on appeal reveals no issue of arguable merit, and therefore the respondent's appointed appellate attorney is granted leave to withdraw as counsel, and the orders of the circuit court are affirmed.

¶ 2    David C., the respondent, appeals from the circuit court's orders finding him unfit to parent his minor daughter, Naomi C. (N.C.), and terminating his parental rights to her. His appointed appellate attorney has concluded that there is no reasonably meritorious issue on appeal, and on that basis, he has filed a motion to withdraw as counsel, as well as a brief in support thereof. See *Anders v. California*, 386 U.S. 738 (1967); *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000) ("The procedure for appellate counsel to withdraw as outlined in *Anders* applies to findings of parental

1

unfitness and termination of parental rights."). The attorney served David C. with proper notice of the *Anders* motion and a copy of the brief, and this court provided him with ample opportunity to file a *pro se* brief, memorandum, or other document explaining why the attorney should not be allowed to withdraw as counsel, or why this appeal has merit, but David C. has not taken advantage of that opportunity. After examining the *Anders* motion and brief, as well as the entire record on appeal, this court has concluded that the motion is well taken. Accordingly, the *Anders* motion is granted, and the orders of the circuit court are affirmed.

¶ 3                                                     BACKGROUND

¶ 4        This case was initiated on January 5, 2022, when the State filed a juvenile petition alleging that N.C. was a neglected minor. N.C. was born on September 28, 2016, making her five years old at the time the petition was filed. David C. is N.C.'s biological father. Mariel P. is N.C.'s biological mother. The petition alleged that N.C. (1) was neglected under section 2-3(1)(d) of the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/2-3(1)(d) (West 2022)), in that Mariel P. had left N.C. without supervision for an unreasonable period of time without regard for the mental or physical health, or for the safety or welfare, of N.C.; and (2) was neglected under section 2-3(1)(b) of the Juvenile Act (*id.* § 2-3(1)(b)), in that N.C.'s environment was injurious to N.C.'s welfare.

¶ 5        On January 6, 2022, the circuit court held a shelter care hearing. No transcript of the hearing was made. According to the docket entry for that date, the State, David C., Mariel P., and the court-appointed guardian *ad litem* (GAL) for N.C. were present. The circuit court read aloud the petition and explained the proceedings. A single witness, Beth Kempfer of the Department of Children and Family Services (DCFS), testified. The circuit court found that N.C. was 5 years old, and that she had been home alone for at least 15 hours. The circuit court further found that the police had found Mariel P. and had taken her to an emergency room, and that Mariel P. was in a mental-health

2

facility at the time of the shelter care hearing. The circuit court ordered N.C. placed in shelter care, and gave temporary custody of N.C. to DCFS. The circuit court advised N.C.'s parents to cooperate with DCFS and to follow the agency's service plan, or risk losing their parental rights. Finally, the circuit court appointed an attorney for David C. and one for Mariel P.

¶ 6    An integrated assessment, prepared by Lutheran Social Services of Illinois (LSSI) on behalf of DCFS, shed additional light on the circumstances that led to N.C.'s being placed in shelter care. On January 4, 2022, at 8:30 a.m., Carbondale police were called to an alleyway near a home. In the alleyway, they found Mariel P., naked and with feces smeared on her, making delusional and paranoid statements. An ambulance took her to a local hospital for evaluation. Mariel P. did not indicate that she had a child at home. Later that same day, at 11:30 p.m., the police went to the house near that alleyway, in order to perform a welfare check, and they found N.C., home alone. The integrated assessment also pointed out that this was not N.C.'s first involvement with DCFS. In a previous case, opened in December 2019, N.C. was removed from Mariel P.'s care and placed with a relative. N.C. remained with that relative for two years. She was returned to her mother's care in July 2021, by court order. (This court notes that N.C. was returned to her biological mother, Mariel P., in that previous DCFS case only about six months before the home-alone incident that resulted in the instant DCFS case.)

¶ 7    The integrated assessment also stated that David C. self-reported serving time in a federal prison for possession of firearms. He was released from federal prison in November 2021, and was subsequently released from a halfway program on January 29, 2022. (Thus, David C. was in the federal halfway program on the date N.C. was found home alone.) He was, at the time of the assessment, on federal parole for a period of three years. David C. also self-reported that he was convicted of burglary in 2016 and sentenced to three years in the Illinois Department of

Corrections (IDOC). N.C. was born three weeks after he began serving his three-year IDOC sentence. When he was released from IDOC, N.C. was two years old. He began parenting her, David C. reported, until his next incarceration.

¶ 8      Subsequent reports filed with the circuit court revealed that after N.C. was found home alone on January 4, 2022, she was placed in the home of Nicole S., who was N.C.'s paternal aunt. Nicole S. would remain the substitute caregiver for N.C. for the duration of the instant case. Nicole S. also served as N.C.'s substitute caregiver during those two years that ended in July 2021, in the earlier DCFS case.

¶ 9      On June 7, 2022, the circuit court held an adjudicatory hearing. Neither David C. nor Mariel P. were personally present, though each was represented by his or her court-appointed attorney. The GAL was present. The State called Beth Kempfer, an investigator for DCFS, who had testified at the shelter care hearing. Kempfer's investigation showed that N.C., who was five years old, was left home alone on January 4, 2022, at least from 8:30 a.m. to 11:30 p.m., and N.C.'s mother, Mariel P., was supposed to be caring for her on that day. Kempfer opined that a child of N.C.'s age could not safely be left home alone for that amount of time. No other witnesses were called by the State or any party. The circuit court found that N.C. was a neglected minor in that her environment was injurious to her welfare, due to her being left alone by her mother for an unreasonable period of time. The circuit court ordered Mariel P. to undergo a psychological evaluation and directed that N.C. remain in the temporary custody of DCFS. On June 10, 2022, the circuit court entered a written adjudicatory order, and the case was set for a dispositional hearing.

¶ 10      On June 28, 2022, LSSI filed a dispositional report to the circuit court. According to that report, David C. had numerous contacts with the criminal justice system, including two convictions

for burglary and four convictions for "dangerous drugs." David C. had informed LSSI that he had worked "various handy-man jobs since he was released from [federal] prison," but he had not provided LSSI with any proof of employment. The LSSI had the impression that David C. and Mariel P. were "attempting to 'put on a good face' for the case by continuing to visit together and claiming that they are still together and trying to work things out." There was deep suspicion that they were "not being fully honest *** on what is actually going on with their relationship, their progress in services and the extent of Mariel's mental health issues." The dispositional report also detailed Mariel P.'s "long history of mental health services," beginning with a diagnosis of bipolar disorder in 2009.

¶ 11    The dispositional report went on to state that David C. had missed most of his scheduled visits with N.C., even after the timing of those visits was altered in order to accommodate his stated work schedule. According to LSSI, David C. had completed only three of the five drug tests required of him, but the results of those three tests were negative. The dispositional report further stated that: "David has yet to provide any proof that he has begun services. *** He states that he is very willing and ready to get his services done, but has made zero progress in the last 6 months."

¶ 12    The circuit court held a dispositional hearing and entered a written dispositional order on July 15, 2022. The circuit court found N.C. to be neglected and that David C. was unfit to care for the minor. The circuit court also found that DCFS had made reasonable efforts to provide services to the family. Based on those findings, the circuit court made N.C. a ward of the court and granted custody and guardianship of N.C. to DCFS.

¶ 13    A permanency report was filed by LSSI on November 21, 2022. The reported stated that David C. was being held in the Williamson County jail on a charge of criminal trespass and, as such, his progress had been unsatisfactory in regard to every category in his service plan. The

5

report also stated that David C. had been "experiencing psychosis." According to the report, David C. "thought he had killed" Mariel P. in August 2022, and he had phoned N.C.'s substitute caregiver in order to report the killing. The report also related a strange story that involved David C., N.C.'s substitute caregiver, and "the person in the wall." David C. thought that "the person in the wall" was having an affair with Mariel P. Although mental health was not a prime concern with David C. at the start of this case, "[i]t is obvious now that David is dealing with high levels of mental health issues that need to be addressed in order for him to be considered safe for even visits with [N.C.]." At the time David C. thought he had killed Mariel P., he was taken to an emergency room, where he tested positive for "meth." David C. had not engaged in mental-health services or in substance-abuse services. In early September 2022, parental visits with N.C. were suspended due to "major safety concerns" stemming from both parents' mental illness and substance abuse. Visits would not resume until David C. and Mariel P. began to engage in services to address those concerns. As for N.C. herself, she was "a bright, happy, intelligent little girl" who was "doing very well in the foster home," and she had repeatedly expressed her desire to be adopted by her substitute caregiver.

¶ 14    On December 13, 2022, the circuit court held a permanency hearing. David C. was not personally present, bur represented though his appointed counsel. Mariel P. was present with her appointed counsel. The permanency report of November 21, 2022, was reviewed. David C.'s attorney informed the circuit court that David C.'s parole officer had recently stated that David C. would be heading back to prison, for at least a year, on a parole violation. The circuit court found that the appropriate goal for N.C. remained return home, but the circuit court also found that neither parent had made reasonable efforts toward achieving that goal. On December 19, 2022, the circuit

6

court entered a written permanency hearing order, which reflected the circuit court's findings at the hearing.

¶ 15    The next LSSI's family service plan, filed on March 16, 2023, stated that David C. had returned to prison, "for parole violation for using meth." He "[had] not complete[d] any mental health services before going back to prison." Despite expressing a strong desire to be reunited with N.C., his progress was rated "unsatisfactory" for all recommended services. According to the report, David C. was not scheduled for release until November 2023. The report noted that N.C. had been "in care" for 19 months during a previous DCFS case, and that she had been "in care" for 15 months in the instant case. The report recommended changing the goal in this case to "substitute care pending termination of parental rights."

¶ 16    On March 28, 2023, the circuit court held a permanency hearing. David C. was not present, but his attorney was present on his behalf. Mariel P. was present, with her attorney. The circuit court noted that according to the most recent permanency report, David C. was in federal prison, was not completing services, and had not made reasonable efforts toward the goal of N.C. returning home. The circuit court found that Mariel P., too, had not made reasonable efforts. The GAL expressed her support for the recommended change in goal. The circuit court found it appropriate to change the permanency goal in this case to substitute care pending the termination of parental rights. On March 30, 2023, the circuit court entered a written permanency hearing order that reflected this change in the permanency goal for N.C.

¶ 17    The permanency report to the circuit court filed on June 12, 2023, stated that David C. remained in federal prison. The report noted no satisfactory progress or reasonable efforts, whether by David C. or by Mariel P. The report also stated that N.C. was "a spunky, happy little girl" who

had finished kindergarten and was looking forward to first grade, and who wanted to be adopted by her substitute caregiver, who provided her with a safe and nurturing environment.

¶ 18    On June 27, 2023, another permanency hearing was held. Neither David C. nor Mariel P. were present, but each was represented by his or her attorney. The most recent permanency report was reviewed. David C.'s attorney told the circuit court that David C. "has indicated he does want to be involved," but he was not scheduled to be released from prison until September. The circuit court found that neither parent had made reasonable efforts in any of their areas of concern.

¶ 19    A family service plan was filed with the circuit court on August 3, 2023. In regard to David C., the plan noted that he was born in January 1986, that he was "back in prison for parole violation for using meth," and that he had not completed any mental health service prior to returning to prison. As such, the plan stated that David C. was unsatisfactory in all his required services.

¶ 20    On August 7, 2023, the State filed a petition for the termination of David C.'s and Mariel P.'s parental rights to N.C. The petition alleged, *inter alia*, that David C. was an unfit person due to one, or more, of the following: (1) he had failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the minor (see 750 ILCS 50/1(D)(b) (West 2022)); (2) he had failed to make reasonable progress toward the return of the child to the parent during any nine-month period following the adjudication of neglect, and specifically during the period from August 1, 2022, to April 30, 2023 (see *id.* § 1(D)(m)(ii)); and (3) he had abandoned the minor (see *id.* § 1(D)(a)).

¶ 21    On December 27, 2023, LSSI filed a status report to the circuit court. According to that report, David C. had been released from federal prison in November 2023. He was living in a halfway house in St. Louis, where he would remain until released by federal probation. The status report also stated that David C. had begun engaging in mental health services, parenting classes,

and substance abuse services, but LSSI had not received any progress reports from the providers since David C. had failed to sign consents to release. Meanwhile, N.C. was described as "a spunky, intelligent seven year old girl who loves art and anime. *** [N.C.] demonstrates impressive resilience and self-awareness for her age. *** [N.C.] also shows signs of trauma from her situation, although her grief is more centered around her feeling unwanted by her parents rather than grief surrounding separation." N.C. attended counseling through school and at a local trauma counseling center. N.C. "is stable in her current placement, bonded to her caregiver, and wishes to be adopted by [Nicole S.]." Nicole S. "ensures her medical needs are met."

¶ 22 On January 18, 2024, N.C.'s caregiver was granted an order of protection against David C. which included N.C. The order of protection prohibited David C. from communicating with N.C. and required David C. to remain 500 feet away from N.C., and her home and school, at all times.

¶ 23 LSSI filed another status report to the circuit court on February 13, 2024. David C. was living with his sister in Indiana, and he was unemployed. According to that report, David C. had was not regularly engaging in his services and had tested positive for methamphetamines on January 9, 2024. The status reported stated that visitation was still not in the best interests of N.C. because "neither parent [had] demonstrated" that he or she was "safe or stable enough to visit with the child." As for N.C., the report commented: "[N.C.] has been in care for two years since this case opened, not to mention the time she spent in care before this case. She deserves permanency."

¶ 24 On February 27, 2024, following several continuances, the circuit court held a hearing on the State's petition for termination of parental rights. David C. and Mariel P. participated in the hearing via Zoom; their attorneys were present in the courtroom. At the start of the hearing, David C.'s attorney moved for a continuance, explaining that David C. wanted additional time to come

into compliance with the service plan. N.C.'s GAL objected to the motion. The circuit court denied the motion, and the hearing began.

¶ 25    The State called Karma Smith, a foster care case manager for LSSI, and N.C.'s case manager, to testify. According to Smith, David C. was released from prison in November 2023. Prior to his incarceration, the recommended services of substance-abuse treatment, mental-health treatment, and parenting classes were made available to him. "He went through substance abuse treatment," Smith testified, "but unfortunately he relapsed," as evidenced by "[p]ositive drug screens after his treatment." Since his release in November 2023, all of the recommended services had been made available to David C. "He's attended roughly three parenting classes," said Smith. "That's about it." Since his release, David C. had been in contact with N.C.'s foster parent. He "[t]hreatened to show up at the home, has sent multiple text messages, made multiple phone calls over the course of an hour or two to the point that there was an order of protection filed against him for the foster parents and child." In short, Smith testified, David C. had not made reasonable progress toward reunification with N.C. Also, according to Smith, Mariel P. had not made reasonable progress toward reunification; she had not complied with mental-health counseling, drug-abuse counseling, or parenting classes, and she had not stabilized her housing or income, even though she had had since January 2022 to do so.

¶ 26    On cross-examination by David C.'s attorney, Smith testified that during David C.'s incarceration, he had access to mental-health and substance-abuse treatments. According to Smith, David C. said that he had engaged in those services, but Smith had been unable to verify his participation. Since his release from prison, David C. had not engaged in substance-abuse counseling. He had participated in an assessment for mental-health treatment, but he had attended only one mental-health treatment session, which he had attended that morning, *i.e.*, the morning

10

of the hearing on the petition for termination of parental rights. Smith was the only witness to testify at the termination hearing.

¶ 27    The circuit court found, by clear and convincing evidence, that both David C. and Mariel P. were unfit persons. In regard to David C., the circuit court stated that "he has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the minor, and he has failed to make reasonable progress towards return of the child during a nine month period following adjudication of the neglected minor, specifically August 1 of 2022 through April 30 of 2023." The circuit court did not find that David C. had abandoned N.C.

¶ 28    The circuit court proceeded immediately to a best interest hearing. The State again called Karma Smith to testify. According to Smith, N.C., who was seven years old at the time of the hearing, was residing with her foster parent, Nicole S., who was also her paternal aunt. N.C. "absolutely" knew why she was living with Nicole S. N.C. had lived with Nicole S. since coming into care in January 2022, and "[o]ff and on throughout her life." Nicole S.'s home did not have any safety concerns. N.C. played soccer, took art classes, and was "engaged in her church." Nicole S. was dedicated to N.C.'s long-term care, and N.C. had expressed a strong desire to be adopted by Nicole S. N.C. has a "strong attachment" to Nicole S., who makes sure that all her needs are met. There was no cross-examination of Smith by either counsel, and no closing arguments were presented.

¶ 29    Upon completion of the hearing, the circuit court found that it was in N.C.'s best interests and welfare that the parental rights of David C. and Mariel P. be terminated permanently, and it changed the goal regarding N.C. to adoption. The circuit court's finding was based upon its considerations of "the relevant statutory best interest factors" such as N.C.'s physical safety and welfare, her sense of attachment, her wishes, her community ties, and her need for permanency,

11

plus the nature and the length of the relationship between N.C. and Nicole S. and the effect of any change in placement on N.C.'s emotional and psychological well-being.

¶ 30   On March 5, 2024, the circuit court entered two written orders—an "Order Finding Unfitness" and a "Best Interests Order." The former found that David C. and Mariel P. were unfit persons, and the latter terminated the parental rights of David C. and Mariel P. to N.C. David C. filed a timely notice of appeal on March 21, 2024.

¶ 31                                    ANALYSIS

¶ 32   As previously noted, David C.'s appointed appellate attorney has concluded that this appeal lacks arguable merit and has filed an *Anders* motion to withdraw as counsel. David C. has not filed any type of response to the *Anders* motion. In the brief accompanying his motion, appellate counsel raises two potential issues in this appeal, namely: (1) whether the circuit court's findings that David C. was an unfit person, and that terminating his parental rights was in N.C.'s best interests, were against the manifest weight of the evidence, and (2) whether David C.'s counsel in the circuit court was ineffective. For the reasons that follow, this court agrees with appellate counsel that each of these issues lacks arguable merit.

¶ 33   In regard to the first of these two potential issues, this court will reverse only if the circuit court's findings are against the manifest weight of the evidence. *In re Za. G.*, 2023 IL App (5th) 220793, ¶ 31. A decision is against the manifest weight of the evidence only if the opposite conclusion is apparent, or when findings appear to be unreasonable, arbitrary, or not based on the evidence. *Id.*

¶ 34   As the detailed factual summary of this case makes clear, David C. was in the IDOC, serving a sentence for burglary, at the time of N.C.'s birth. He was in federal prison, serving a sentence for a firearms charge, or halfway houses, for much of N.C.'s young life. At the time of

12

the home-alone incident that resulted in the instant DCFS case, he was in a federal halfway program. David C.'s strange or psychotic interactions with N.C.'s substitute caregiver, and his recurrent drug use, provided abundant justification for requiring mental-health treatment and substance-abuse treatment, but David C. never took advantage of the opportunities for such treatments. He took a few parenting classes, but that was all. Despite repeatedly claiming to want to be reunited with N.C., he had missed most of his visitation opportunities with N.C. He had proved himself unable to maintain employment or a stable living situation. Clearly, the circuit court did not err in finding that David C. had failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of N.C., and that he had failed to make reasonable progress toward the return of N.C. during any nine-month period following the adjudication of neglected minor. Thus, we find that the circuit court's finding of unfitness was not against the manifest weight of the evidence as the finding was richly supported by the evidence.

¶ 35    Furthermore, the circuit court did not err in finding that N.C.'s best interests required terminating David C.'s parental rights. Termination of parental rights is an extreme act. *In re Za. G.*, 2023 IL App (5th) 220793, ¶ 52. Nevertheless, after a circuit court has determined that a parent is unfit, parental rights must yield to the best interests of the child. *Id.* After the finding of unfitness, the State bears the burden of proving by a preponderance of the evidence that the termination of parental rights is in the child's best interests. 705 ILCS 405/2-29(2) (West 2022).

¶ 36    Here, the circuit court found, based on its considerations of "the relevant statutory best interest factors" (see *id.* § 1-3(4.05)), that N.C.'s best interests required termination of David C.'s parental rights. N.C. already had lived much of her life with her substitute caregiver, Nicole S., who was also her aunt. She had a safe home with Nicole S., who watched out for her medical and psychological needs. N.C. was doing well in school. Plus, N.C. felt secure with Nicole S., felt

13

attached to her, and oftentimes expressed her desire to be adopted by Nicole S. Most of all, termination of David C.'s parental rights offered N.C. a sense of permanence and order, two things that were severely lacking in her life with her biological parents. Therefore, we find that the circuit court's termination of David C.'s parental rights was not against the manifest weight of the evidence.

¶ 37    The appellate counsel's second potential issue on appeal is whether David C.'s counsel in the circuit court was ineffective. To prevail on a claim of ineffective assistance of counsel in a juvenile neglect case, a respondent must show that his counsel's representation fell below an objective standard of reasonableness, and that, but for the unreasonable representation, there is a reasonable probability that the outcome would have been different. *In re R.G.*, 165 Ill. App. 3d 112, 127-28 (1988) (in cases involving termination of parental rights, determination of the respondent's claim that he was deprived of his right to the effective assistance of counsel will be guided by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984)).

¶ 38    The facts that made the circuit court's decisions about David C.'s unfitness and N.C.'s best interest seem almost inevitable are the same facts that made counsel's representation of David C. objectively reasonable. In his *Anders* brief, the appellate attorney neatly dispatches this potential issue: "The actions and inactions of [David C.] throughout the pendency of the case afforded his counsel little of positive value to work with. His engagement in services and his involvement in the minor child's care and upbringing was minimal. It is hard to imagine that any course of action his counsel might have taken would have afforded him a different outcome." This court agrees.

¶ 39                                  CONCLUSION

¶ 40    This appeal presents no issue of arguable merit. Accordingly, appellate counsel is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 41    Motion granted; judgment affirmed.